## Case No. 12,895.

### In re SINCLAIR.

[8 Am. Law Reg. 206.]

District Court, E. D. South Carolina. 1860.

ADMIRALTY—SURRENDER BY CLAIMANT OF INTEREST—EFFECT OF SUIT IN PERSONAM—BREACH OF CONTRACT.

1. Where a libel was filed in rem and in personam for damages sustained by a consignee in consequence of the schooner's springing a leak by reason of her unseaworthiness, it was *held*, that the owner could not protect himself against the in personam proceeding by surrendering his interest in the schooner and claiming exemption under Act Cong. March 3, 1851, c. 43 (9 Stat. 635).

[Cited in Barnes v. Steamship Co., Case No. 1,021.]

2. This act is not to be confined to torts alone; but there being a representation of seaworthiness proceeding from the owner or his agent, there may be a breach of the contract arising from such representation, for which the owner will be liable in personam, under the true construction of the act of 1851.

In admiralty. Christobal Bravo, and others, consignees of merchandise shipped on board of the schooner Ella, filed their libel in rem and in personam, to recover damages sustained by them in consequence of the vessel, immediately after her departure, springing a leak. The water gained upon her so rapidly, that she was run ashore. The goods on board of her were greatly damaged. The pleadings in the case having been made up, and the evidence taken, the cause was heard, and a decree made on the 9th June, 1858. By the decree the vessel was condemned and ordered to be sold. Daniel Sinclair, one of the owners of the Ella, against whom process of foreign attachment had issued, and under which process, certain property belonging to him had been attached, filed his petition to be allowed to surrender his interest as part owner of the schooner Ella, and her freight, in discharge of all further personal liability on his part; and contended that such was his right under the act of congress, passed the 3d March, 1851 (chapter 43). The following opinion of the court, upon the question made in the petition, was pronounced by

MAGRATH, District Judge. The petitioner has applied to this court for the benefit, to which he claims to be entitled under the act of congress of the 3d of March, 1851 (chapter 43). A libel has been filed against the schooner Ella, and process in personam has also been asked against the petitioner as one of the part owners. The principal case has been heard; and the decree of this court establishes the unseaworthiness of the vessel as the cause of the damage to the goods. The vessel has therefore been condemned. The amount of the damage claimed by the shippers is much more than the value of the vessel; and the application now is to limit the liability of the petitioner to the value of the vessel and her freight; and upon the surrender of his interest in the same, to cause all proceedings against him to be stayed. The application has been resisted with zeal and ability; and I will consider the various objections which were presented, in the examination which I am about to make. The question involved is of great practical importance; and the conclusion at which I have arrived, as to the true construction of the act referred to, is the result of the most careful consideration I could afford.

The leading principles which in the United States are applied in cases of the liability of a carrier, have been derived from Great Brit-

ain. Here and there, modifications, involving qualifications of their application, have been introduced; but the leading tests laid down are still regarded as the canons of construction. To the transportation of property by water, the rule applicable to a common carrier is referred. And in contracts made by the master in pursuance of any express direction, or by virtue of the authority confided to him, and in the proper execution of his duty, the owner is held liable without limitation of that responsibility. 2 Kent, Comm. 609. The rule of the civil law, in regard to the obligations of the owner, resulting from the contracts or torts of the master, is similar to the rule of the common law. 3 Kent, Comm. 258. But the general maritime law recognized a different rule; and by it, the liability of the owner was not enforced beyond his share or interest in the vessel and the freight which was due. Id. 217; 1 Boulay-Paty, 273. The rule of the common law in Great Britain was modified in 1734 by the passage of the 7 Geo. II. c. 18; the consequence of a petition of merchants, who, alarmed by the case of Boucher v. Lawson [cited in 1 Durn. & E. 78], in which the owner was sued for coin embezzled by the master, sought protection by an act of parliament. The act recites the evil, as it has just been stated, and then declares that the liability of the owner shall not extend beyond the value of the ship and freight. Abb. Shipp. 488. Soon after the case of Sutton v. Mitchell, 1 Term R. 18, was tried; where the question arose as to the right of the owner to this limitation of his liability, when the act was the act of a stranger, and not of the master or mariner. And this was followed by the 26 Geo. III. c. 86 (1786), in which the 7 Geo. II. c. 18, was amended. Without referring here to other statutes, which, in certain cases to which they refer, have modified the liability of the owner. I may come directly, in connection with the question before me, to the 53 Geo. III. c. 159, in which material modifications were further made: and the 17 & 18 Vict. c. 194, in which all acts in reference to this question have been included. and which is now the law of Great Britain. In the United States, a statute was passed in Massachusetts; one of the same import in Maine; and the act of congress of 1851, are the only legislative exceptions to the general liability. In cases to which these are not applicable; or in which the owner has not limited his obligations by a special contract, excluding his liability in certain enumerated cases; the rule of the common law, as it was in Great Britain and in the United States before these statutes, is still enforced. 3 Kent, Comm. 217. The third section of the act of 1851 provides, that the liability of the owner of a vessel for the embezzlement. loss or destruction by the master, officers, mariners, passengers, or any other person or persons; of any property goods or merchandise, shipped or put on board such vessel; or for any loss, damage, or injury by collision: or for any act, matter or thing,

loss, damage, or forfeiture, done, occasioned or incurred without the privity or knowledge of such owner: shall not exceed the value of the interest of such owner in the ship or freight. 9 Stat. 635. The act passed by the state of Massachusetts is very similar to the act of 1851. And in Pope v. Nickerson [Case No. 11,274], Judge Story says: "It admits of most serious doubt whether the statute of Massachusetts was designed to apply to any cases of contract, strictly within the scope of the authority of the master, and in respect to which he not only had the right to bind the owner, but his acts were justifiable and proper, and, indeed, throughout, a part of his duty under the circumstances." In Stinson v. Wyman [Id. 13,460], Judge Ware held, that the statute of Maine applied not only in cases of the fault or negligence of the master. but also in cases of his direct and wilful fraud. And in The Rebecca [Id. 11,619], Judge Ware, in a note appended to his decree, enters upon a learned examination of the question, concurring in a great measure with Judge Story; and to his opinion I shall have occasion again to refer.

As far as I know, the case before me is among the first which has made it necessary to consider the scope and operation of the act of 1851. It is proper, therefore, to bear in mind the words of the act, for the question is one of construction. The section which refers to this case is divided into three parts: first, the embezzlement, loss or destruction by the master, officers, mariners, passengers, or any other person or persons, of property shipped or put on board: next, the loss, damage, or injury by collision: next, any act, matter or thing, loss, damage or forfeiture done, occasioned, or incurred without the privity or knowledge of the owner. These words, "without the privity or knowledge of the owner," necessarily first arrest our attention, and are really the key to the question of the application of this section to cases of contracts: for. as it excludes cases in which the "privity or knowledge" of the owner occur, it must, unless otherwise explained, exclude contracts; inasmuch as every valid contract includes the idea of the "knowledge" of the parties, and implies a "privity" between them. This "knowledge" and this "privity" equally arise, whether the contract is made by an agent in the exercise of sufficient authority; or by the principal in person; or by an agent not authorized at the time of making the contract; but whose act the principal has made binding, either by express adoption, or any other mode of ratification. And this argument of the exclusion of contracts, and therefore the exclusion of any limitation of the obligation of the owner in such cases, is strengthened as we proceed in the analysis of the section. The first part of it relates to embezzlement, loss or destruction. Embezzlement, of course, excludes the idea of contract; the liability which it induced upon the owner is ex delicto. Do the general terms which follow, "loss," or "de-

struction," include any acts except such as are ex delicto? That they do not, is clear, from the class of persons to whose agency they are referred. The "loss" or "destruction," is that of the master, officers, mariners, passengers, or any other person. But the officers, mariners, passengers, or any other person or persons, have no authority by which they can bind the owner to any contract they, or either of them, may make. The Anne [Case No. 412]. For their wrongful act the owner is liable; and against loss or damage resulting thereby, he is an insurer. The exclusion or limitation of his liability must then manifestly be referred to cases, in which by law the owner might have been made liable, cases of tort and not of contract. It is true the authority of the master to bind the owner in certain cases by contract, is undoubted; but where the master, who might affect the owner either in contract or tort, is joined with a number of persons who could only affect the owner in tort; the rule of construction requires us, in the application of a general rule of exemption, to confine it to cases in which all of these persons are capable of affecting the owner. The next part of the section relates to loss, damage or injury by collision; this is so clearly tortious that it requires no examination. The last part of the section is, any act, matter or thing, loss, damage or forfeiture, done, occasioned or incurred, without the privity or knowledge of the owner. I have already shown that the exclusion of matters which involve the knowledge or privity of the owner, necessarily excludes the idea of this limitation of responsibility being applied to cases of contract, which imply the existence and presence of both.

The exemption which is claimed in this case, if it arises at all, is under this last part of the section. It is a liability arising, however, from a contract: and I think enough has been said of the import and effect of the terms, without the "knowledge" or "privity" of the owner, to show that contracts are excluded from the section. If, indeed, the words in this part of the section were added, which are found in the first part of the section; and the several things set forth in the last part of the section be connected, with masters, officers, mariners, passengers, or other person or persons, as the persons by whom they are to be done; then the argument for the exclusion of contracts, from the limitation of responsibility, declared by the act, would be made, if possible, still stronger. But although these are not named as the persons whose acts create the liability, yet they are not only to be considered, as if specially named, by the proper rule of construction; but if not considered as named, the last clause is without meaning, and cannot be made applicable to any case. For if it is denied that the master, officers, mariners, passengers, or other person or persons, are to be considered as included in this part of the section; and if the statute excludes the owner and owners; it will be seen that the argument on the one side, and the statute on the other, exclude all human agencies by which the several acts, matters and things could be done. And as the statute excludes the owner or owners; and includes a class of persons whose acts, it is proposed, should not affect the owners except to a certain extent: a subsequent enumeration of other acts, in the same section, with no reference to any other class of persons, and relating also to the same exemption, will be held to refer to the same persons who have been already named. These so named, being persons who cannot bind the owner by contract, but may by tort; necessarily make the liability from which the owner is excused, that liability only which they could impose. The fourth section of the act, makes the exclusion of any liability arising from contract, still more plain. In it the mode of proceeding is regulated: and the subject matter is "such embezzlement, loss or destruction," which in the first part of the third section is occasioned by the master, officers, mariners, passengers, or other person or persons. It is clear that in the fourth section, all of the divisions or parts of the third section are considered as ejusdem generis. They must be so considered to participate in the mode of proceeding there established. If they are not so considered; if they do not fall under the head of embezzlement, loss or destruction by the persons named in the section; or if they are not connected with these acts by a rule of construction; then are they not provided for in the distribution.

I am not ignorant of the fact, that the conclusion which I have already foreshadowed of the exclusion of contracts from this act, is perhaps in opposition to the view which has been taken of the act, by others who have had it under consideration. In the case of Watson v. Marks [Case No. 17,296]. Judge Kane does not refer to the distinction taken here: perhaps it was not necessary; for the loss in that case he considered the result of a tortious taking. But his opinion evidently was, that the act embraced cases of contract; and he refers to the examination by Emerigon of the provisions of the ordinance of Louis 14th, as illustrating the policy of this law. Whatever may be our opinion of the construction by Emerig. Mar. Loans, c. 4, § 11, it must be remembered that his opinion is but his construction of that law; and that others equally eminent have insisted upon a different construction. Valin adopts the conclusion, that the ordinance referred to does not exempt the owner from a liability in cases of contracts by the master. Pothier concurs with Emerigon. Oeuv. de Pothier, 4, p. 348. Pardessus adopts the opinion of Valin; and Boulay-Paty, in a brief but admirable summary of the discussion, earnestly advocates the conclusion of Emerigon. Boulay-Paty, 2, p. 263. In our language also, Judge Ware, in The Rebecca [supra], a refer-

ence to which I have already made, has examined the subject with great care and ability, and has adopted the conclusion of Valin, as that most consistent with the various relations which at this time the owner occupies to the vessel, the master, and those to whom the owner is affected with the obligations of a contract.

But if all the commentators to whom I have referred, agreed as to the policy of the law, and its construction, it could not properly be said to carry with it, a conclusion in the matter which is before me. In the ordinance of Louis 14th, as in the Code de Commerce of France, the rule is stated as a simple proposition; not embarrassed by any context, or circumstances operating to involve it. The doubt in its construction has been really more the doubt of what the law should be, than of what it was. The opinions, therefore, of the commentators, are more applicable to the question of policy, than strictly of construction. Before the ordinance of Louis the 14th, which is said to have embodied the wisdom of the maritime world, the liability of the owner for the acts of the master, of either ex contractu, or ex delicto, was limited to his interest in the vessel and freight. And when by the clause of the ordinance which limits the liability of the owner, it is claimed—contrary as must be admitted, to the ancient maritime code—that such an exemption did not extend to, or embrace the obligation arising from contracts, it is in fact a departure from the old rule of the maritime law, and the substitution of the rule of the common law. The limitation of the obligation of the owner in cases of tort, but not in contracts, although rejected by Boulay-Paty, is admitted by him to have been adopted by the court at Rouen.

It is manifest that the question of construction here really involves another of great importance. It is whether the act of 1851 is to be regarded as a modification of the rule of the common law affecting the contract of a carrier; or the commencement of a system of maritime legislation; the construction and application of which must be considered in connection with that great body of maritime laws, which by the labors of Pardessus, have been collected in one work; and furnish us with all the knowledge which exists, in regard to the maritime law of the world.

In Salmons Falls Manuf'g Co. v. The Tangier [Case No. 12,265], the act of 1851 was involved, and came before Judge Curtis. The liability there arose from contract. The learned judge, it is true, held that the case was not within the terms of the act: yet he did not intimate any doubt of the application of the act to a liability arising from contract. He refers to the case of Morewood v. Pollok, 18 Eng. Law & Eq. 342, in which case a question arose under the second section of the 26 Geo. III. c. 86. That case was strictly confined to the particular section in

which the exception of fire was introduced, and nothing was said of the general construction of the statute.

But in Sutton v. Mitchell, already referred to, the object of the 7 Geo. II., of which the 26 Geo. III. was an amendment, is thus explained: "The act," says Buller, J., "was meant to protect the owner against all treachery in the master or mariners, as appears from the clause in question; (referring to a general clause corresponding to the last part of the third section of the act of 1851.) It meant to relieve the owners from hardship, and to encourage them; at the same time saying, that so far as you have trusted the master and mariners yourself, so far you shall be answerable; which is to the value of the ship and freight." This protection of the owner from the negligence or delicts of others; so stated in Rodrigues v. Melhuish, 28 Eng. Law & Eq. 475; in Sutton v. Mitchell, 1 Term R. 18; is again affirmed with great force in Lyon v. Mells, 5 East, 428: although that case did not relate to a statutory exception, but an exception claimed as an agreement of parties. Lord Ellenborough declared that the object of the notice "was to limit the responsibility of the owners in those cases where the law would have made them answer for the neglect of others, and for accident which it might not be within the scope of ordinary caution to provide against."

Since the 26 Geo. III., various amendments have been made in succeeding statutes, until in the statute of Victoria, already referred to, all have been consolidated in one general act. It is, however, from this statute of 26 Geo. III. that our act of 1851, is taken. And it must be remembered that after the 26 Geo. III. was passed, the 53 Geo. III., and the 14 & 15 Vict. were passed; and in both of these statutes material alterations have been made in the act of 26 Geo. III. By the 53 Geo. III. c. 159, an owner is not liable for loss or damage arising or taking place by reason of any act, neglect, matter, or thing done, omitted, or occasioned, without the fault or privity of the owner. It will be seen at once how much more comprehensive is the exemption than that under the former statute. The mode in which the exemption it set forth in the 17 & 18 Vict. is nearly similar: fault or privity being substituted for knowledge or privity in the earlier statutes. But another important modification was made in the 17 & 18 Vict.: the same liability is preserved for loss or damage arising on each of several distinct occasions, as if no other loss, damage, or injury, had arisen; and the value of the ship is estimated at the time of the loss or damage. A contrary rule, however, has been laid down by Judge Kane in Watson v. Marks [supra], who holds that the value of the vessel is to be ascertained at the time of suit brought; and if the vessel has been wholly lost, there can be no recovery.

It seems to me clear, that if we consider

the act of 1851, as anything more than a legislative exception of the liability of the carrier, as the same is enforced at the common law; and especially if we regard it as a rule to be construed by a reference to the general maritime law instead of the common law, much confusion and uncertainty must arise in its application. I have nothing to say as to the wisdom with which in a maritime court, the rule of the common law, originally was introduced. But it has been introduced; is constantly enforced; and is, in cases like this to all purposes, the rule of the maritime law of this country. If we should recur to the rule of the maritime law, it is now a matter of doubt with the ablest commentators how far the liability of the owner for the contracts of the master, is affected by the marine ordinance of France. And the argument which they use, who favor a general application of the exemption, is precisely that which may be urged here against the extended construction of the statute. The rule of the ancient maritime law, which is their guide, is not more clear than the common law rule which these courts have adopted. And surely no proposition can be more bold than that of considering the act of 1851, as repealing the rule altogether of the common law, and substituting that of the general maritime law. If we regard this act, then, of 1851, as being the declaration of certain exceptions to the liability of the owner at common law, we find ourselves, by reason and authority, assisted in its proper construction. We know that the liability of the owner was general and unlimited, that the application for relief was not suggested by the apprehended consequences of contracts, but delicts—that it was asked as a protection from tortious acts, that its application was not liberally made, that it was amended without adding anything to it in the way of contracts; and from the law in this condition we framed our act; that against the application of the exemption to contracts Judge Story has given the weight of his name; that all the cases in the books which have been reported under the 26 Geo. III., are cases of delicts; that Judge Ware has given the weight of his argument to the authority of Judge Story, and has conclusively shown that the relative position of master and owner in former times, out of which grew the limitations of the responsibility of the owner under the ancient maritime law, is wholly changed; and, that although for delicts the limitation of responsibility may be maintained, for contracts made directly by the owner, or by the master with the authority of the owner, there should be no limitation of responsibility.

We have no opinion from the supreme court as to the proper construction of this statute; but we have its judgment of the rule of law applicable to the liability of the carrier, where that liability is modified by the operation of a special agreement restrictive of liability. And the rule laid down in 6 How. 344, can

scarcely be supposed to indicate the willingness of that court to condemn the former rule, unless the obligation to do so is plainly manifested by the legislature. In this act of 1851, I cannot find such manifestation. Indeed, this fact is plainly in opposition to such a conclusion; that the 26 Geo. III. was adopted as the model of the act of 1851, instead of the 53 Geo. III.; and that the general words of the French code, although, of course, familiar to congress, were passed over; and those words adopted which were found in a statute, the judicial construction of which we have seen was, that it was intended to protect the owner from the treachery of the master and mariners. I believe that the 53 Geo. III. did increase the exemption of the owner, perhaps even to contracts, but that the 7 Geo. II. and 26 Geo. III. certainly did not. The Mary Caroline, 3 W. Rob. Adm. 104. See Wilson v. Dickson, 2 Barn. & Ald. 2; Brown v. Wilkinson, 15 Mees. & W. 391; Dobree v. Schroder, 2 Mylne & C. 489. In Pope v. Nickerson [Case No. 11,274], Judge Story says, he has looked into the English statutes, from which the statute of Massachusetts was borrowed, referring to 7 Geo. II. and 26 Geo. III., and finds them applicable to torts and malfeasance of the master and mariners. The Dundee, 1 Hagg. Adm. 109; Gale v. Laurie, 5 Barn. & C. 156; Wilson v. Dickson, 2 Barn. & A. 2; Morris v. Robinson, 3 Barn. & C. 196. In The Dundee, 1 Hagg. Adm. 109, the language of Lord Stowell is explicit, in considering the 7 Geo. II. and 26 Geo. III. as applicable to cases of torts, and the 54 Geo. III. as extending the operation of the exemption. How far in itself it extends the exemption, or how much further still it has been extended by the 17 & 18 Vict., need not be discussed; the construction of the 26 Geo. III., the statute after which the act of 1851 was framed, being only material for us.

But, if in this construction of the statute I should have erred, there is another ground upon which it seems to me that the owner is not entitled to the benefit of the act. The rule of law admits a limitation of liability by special exceptions, which, when made, constitute the contract. To this, however, the assent of the parties must be matter of evidence. A notice is not an exemption of the carrier unless the other party assents to it. No law of which I have any knowledge, has declared that in regard to all contracts which the owner makes himself, he shall be bound thereby only to a limited responsibility. And no exemption arising from any legislative declaration can be stronger, than if agreed to by both parties as a special contract, which, when it exists, is said to be the law of that case. In this case the contract was with the master, but it was strictly within the limits of his authority; and became the contract of the owner, as complete and binding upon him, as if he had personally made it. The law connects with this contract a representation, presumed to have been given; inserts in it a

covenant presumed to have been made; and that representation the law declares shall proceed from the owner; and that covenant be considered as made by him. It has ever been the policy of the law to refer the liability for seaworthiness directly to the owner, and hold him liable for it. A loss from that cause is held to be a loss proceeding from a failure in a representation of the owner, a breach in his covenant. If under the general words of the act of 1851, this limitation of liability is inferred in contracts of affre'ghtment, it must include other contracts also; but how can it exclude any liability resulting from the contract of the owner when the exemption does not extend to anything done with his "privity" or "knowledge?" How can you affirm a want of knowledge of a representation, which by a presumption of law the owner is held to have made; or a want of privity in a matter of contract, which by a like presumption, he is held to have executed? Even if it were so, that congress would consider it proper to limit the owner's liability for the contracts of the master; upon what principle would it be urged that the liability of the owner for his own contracts should be limited? To say that the owner is not liable for the breach of his contract, by his agent, if the breach is without privity or knowledge of the owner, is to reverse the universal rule that the act of the agent in the execution of a certain duty is the act of the principal who employs him; and to hold, that a principal can discharge himself of the obligation resulting from his contract, by committing to the agency of another that for which he bound himself. Indeed, I consider the true principle in an analogous case well laid down in Rodrigues v. Melhuish, 28 Eng. Law & Eq. 475, in which the question was agitated concerning the liability of the owner when a pilot was in charge. The court then said: "The law now is, not that the owners are exonerated from the consequences of an act of negligence, but that they are bound to show that the negligence was the act of the pilot." Although by positive enactment, when the pilot was in charge, the owner was declared not liable, still, with the pilot on board, and in charge, the owner was held bound to prove that the negligence was the act of the pilot. Failing to do so, the owner would be liable. And so it is here: Their liability for others is limited in cases which may be without their privity or knowledge; and it is for those who in such cases seek to change them, to show on their part privity or knowledge. But where the fact of privity and knowledge is a presumption of law, as is the case in every valid contract of the owner, the operation of the act of 1851 is excluded by its own language.

I have not adverted to the considerations of policy or inconvenience urged in the argument, because these I consider fallacious aids generally in the construction of a written law. I have preferred to rest this judgment upon the cotemporaneous exposition of the statute of Great Britain, from which the act of 1851 has been taken; (15 Mees. & W. 391; 3 W. Rob. Adm. 101; 2 Mylne & C. 489,) the acquiescence in that construction ever since; and the congruity of that construction with the rules which are applied in cases of this kind as the rules of the maritime law. Rules which, although derived from the common law, are enforced in maritime contracts without regard to their source; and are now so interwoven with that jurisdiction in this court, that nothing less than their special abrogation would authorize this court in regarding them as superceded, however they may be modified by agreement of parties or legislation.

With these views I must refuse the prayer of the petitioner.

NOTE. The parties appealed from this decree, and the question raised was argued before Judge Wayne, of the supreme court. A doubt was expressed upon the point how far the case admitted of an appeal, as no final decree had been made in the principal case. Judge Wayne therefore delivered no final opinion in the case. The appeal was never afterwards prosecuted, and the opinion herein given was acquiesced in.

